# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SUSAN DRESS, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Civil Case No. 1:19-cv-00343-LO-IDD |
| v. | |
| CAPITAL ONE BANK (USA), N.A., | |
| Defendant. | |

**DECLARATION OF KRISTEN CHAPMAN IN SUPPORT OF**
**CAPITAL ONE'S MOTION TO DISMISS**

I, Kristen Chapman, declare as follows:

1.      I have been employed by Capital One Services, LLC, or one of its predecessors in interest, since 2001.  Capital One Services, LLC provides services to Capital One Bank (USA), N.A. ("Capital One") including account management, creative design, database management, accounting, human resources, and other operational and managerial services.  In my current role, I support the domestic consumer credit card business as a Process Engineer.  Both Capital One Services, LLC and Capital One are either directly or indirectly wholly-owned subsidiaries of Capital One Financial Corporation.

2.      I submit this declaration in support of Capital One's motion to dismiss the above-captioned action.  Except as otherwise stated, I have personal knowledge of the facts set forth in this declaration based on my work for Capital One, my review of Capital One's records, and information in the knowledge of my employer.

3.    I understand that in her Complaint filed in this action, Susan Dress accuses Capital One of charging interest on her account in violation of her Capital One Customer Agreement.  Attached as Exhibit A is a true and correct copy of the Capital One Customer Agreement that governs Mrs. Dress's Capital One credit card account ending in account number 9645.

4.    My responsibilities at Capital One also include being familiar with the manner in which Capital One charges interest to credit card accounts.  As part of my job responsibilities, I understand the policies that govern when interest is assessed to a customer's account and in what amount.

5.    In the ordinary course of its regularly conducted business, Capital One maintains electronic account records related to each credit card account.  These records are made on or about the time of the events reflected in each record, and I have become and am familiar with Capital One's records.  These records reflect, among other things, all transactions made to a particular credit card account.  Capital One's records in relation to these charges are created in the ordinary course of business, at or near the time that the transactions reflected therein occurred.  Capital One relies on these records in the ordinary course of managing and servicing cardholders' credit card accounts.  In my experience, the systems used by Capital One to maintain such records are reliable and kept in a good state of repair, and Capital One has procedures for inputting documents and other data into the systems that ensure accuracy.  Only authorized personnel are permitted to obtain documents and information from these systems.

6.    Except as otherwise noted below, the exhibits attached to this declaration are true and correct copies of account records from Capital One's systems.  I understand that counsel has redacted certain information from these records to protect Mrs. Dress's privacy.

**Mrs. Dress carries a balance through December 22, 2017.**

7.      In October 2017, Mrs. Dress was sent a billing statement reflecting that she owed $1,263.04 on her Capital One credit card account and that payment was due by November 22, 2017.  A true and correct copy of this October 2017 billing statement is attached hereto as Exhibit B.

8.      In November 2017, Mrs. Dress was sent a billing statement reflecting that she owed $1,213.74 on her Capital One credit card account and that payment was due by December 22, 2017.  A true and correct copy of this November 2017 billing statement is attached hereto as Exhibit C.

9.      The November 2017 statement reflects that Mrs. Dress did not pay the entire "New balance" of $1,263.04 shown on her October 2017 billing statement by November 22, 2017.  Rather, she paid only $105.90, and left the remaining balance in the amount of $1,157.14 unpaid.  In other words, Mrs. Dress "carried" a $1,157.14 balance from the billing cycle reflected on her October 2017 statement into the billing cycle reflected on her November 2017 statement. This is consistent with Mrs. Dress's conduct in earlier months, in which she did not pay her statement balance in full and thus carried a balance from one month to the next.

10.     Of the $1,213.74 balance owed on Mrs. Dress's November 2017 billing statement, $1,157.14 reflected the amount carried over from the previous month, $30.99 reflected new purchases that posted between October 26 and November 25, and $25.61 reflected interest that had been charged on November 25.

11.     In December 2017, Mrs. Dress was sent a billing statement, a true and correct copy of which is attached hereto as Exhibit D.  The December 2017 statement reflects that a

single purchase was made to Mrs. Dress's account between November 26 and December 25:  a

$163.66 transaction that posted on December 19, 2017.

12.     The December 2017 statement also reflects that Mrs. Dress paid the entire "New

balance" shown on her November 2017 billing statement by the due date of December 22, 2017.

A credit in the form of a $5.59 cash-back reward posted to Mrs. Dress's account on December 7,

and a payment in the amount of $1,208.15 posted to Mrs. Dress's account on December 22,

2017.

**Mrs. Dress is charged interest in December 2017 on her accrued balance through December 22, 2017, not on her new purchase.**

13.     The December 2017 statement also indicated that Mrs. Dress's account was

charged $20.83 in interest.  Attached as Exhibit E is a true and correct copy of a spreadsheet I

worked with my team to prepare that demonstrates the logic underlying Mrs. Dress's December

2017 interest charge.

14.     As I explain below, Mrs. Dress's December 2017 interest charge is comprised

entirely of interest assessed on the $1,213.74 "New balance" reflected on Mrs. Dress's

November 2017 billing statement through December 22, 2017 (the date that balance was paid in

full).  No interest was charged on the December 19, 2017 new purchase transaction (in the

amount of $163.66).

15.     Under the heading "Interest Charges and Fees," the Customer Agreement

Provides in part:

> We will charge *Interest Charges* and *Fees* to your *Account* as
> disclosed on your *Statement* and other *Truth-in-Lending
> Disclosures*.  In general, *Interest Charges* begin to accrue from the
> day a transaction occurs.  However, we will not charge you interest
> on any new transactions posted to the purchase *Segment* of your
> *Account* if you paid the total balance across all *Segments* of your
> *Account* in full by the due date on your *Statement* each month.

- 4 -

Ex. A at 3.

16.     On the back of Mrs. Dress's December 2017 statement, under the heading "**How do you Calculate the Interest Charge?**", Capital One explains the three-step "Average Daily Balance" method for calculating interest charges on Mrs. Dress's account.  Ex. D at 2 (emphasis in original).

17.     First, "we take the beginning balance each day and add in new transactions and the periodic Interest Charge on the previous day's balance.  Then we subtract any payments and credits for that segment as of that day.  The result is the daily balance for each segment."  Ex. D at 2.  The daily periodic interest rate is "APR divided by 365."  *Id.*  In Mrs. Dress's case, because her APR is 23.90 percent, *see* Ex. D at 3, her daily periodic interest rate is 0.0654800%.

18.     Rows 7-36 of Exhibit E illustrate how the "Average Daily Balance" method applies at each day of Mrs. Dress's billing cycle.  As explained on the back of Mrs. Dress's billing statement: each row starts with the daily beginning balance, which is the daily balance from the previous day; adds new transactions on which interest may accrue and the daily periodic interest charge on the previous day's daily balance; and subtracts any payments or credits to get the daily balance for a particular day.

19.     As Exhibit E illustrates, for Mrs. Dress's account, the first day of this billing cycle does not include an interest charge on the previous day's balance.  Exhibit E also shows that the credits and payments Capital One received from Mrs. Dress on December 7 and December 22 reduced Mrs. Dress's daily balance.

20.     Exhibit E also demonstrates that the December 19, 2017 new purchase of $163.66 has no effect on the amount of interest assessed in this billing cycle.  This means that no interest was charged on that purchase.

21.     Second, "we add the daily balances together and divide the sum by the number of days in the Billing Cycle.  The result is the Average Daily Balance."  Ex. D at 2.  The "Average Daily Balance is referred to as the Balance Subject to Interest Rate in the Interest Charge Calculation Section" of a billing statement.  As Exhibit E illustrates, the total daily balances total $31,815.85, and there were 30 days in the relevant billing cycle.  This means Mrs. Dress's average daily balance during this billing cycle (rounded down to the nearest penny) was $1,060.52.  This is the amount included in the "Balance Subject to Interest Rate" field of Mrs. Dress's December 2017 billing statement.  *See* Ex. D at 3.

22.     Finally, "[a]t the end of each Billing Cycle, we multiply your Average Daily Balance for each segment [1] by the daily periodic rate (APR divided by 365) for that segment, and then we multiply the result by the number of days in the Billing Cycle. . . . The result is your total Interest Charge for the Billing Cycle."  Ex. D at 2.  As reflected in Exhibit E, when Mrs. Dress's average daily balance ($1,060.52) is multiplied by her daily periodic rate (0.06548%), and then multiplied by the number of days in the billing cycle (30), the result is an interest charge of $20.83.

23.     As the foregoing example demonstrates, Mrs. Dress's December 2017 interest charge reflected interest charged on the balance she carried over from the previous billing cycle, which remained on her account from November 26, 2017 (the date the billing cycle began) to December 22, 2017 (the date the balance had been paid off in full).

24.     Importantly, Mrs. Dress was not charged any interest on her December 19 new purchase transaction.  If Mrs. Dress had been charged interest on that transaction, the December

---

[1]     Different interest rates can be charged on different "segments" of an account (*i.e.*, cash advances and balance transfers are different "segments").  Mrs. Dress's account in December 2017 only reflected a balance owed on a single segment of her account:  the "purchase" segment.

2017 interest charge would have been $21.58, not the $20.83 she was actually charged.  To illustrate, attached as Exhibit F is a true and correct copy of spreadsheet I worked with my team to prepare that demonstrates the same logic reflected in Exhibit E, but assumes that Mrs. Dress was charged interest on her December 19 new purchase transaction.

25.     Attached as Exhibit G is a true and correct copy of a screenshot of Capital One's system of record that contains information about how interest charges were assessed during Mrs. Dress's December 2017 billing cycle.  The field "AH31-ADB-CYC1P-SUBJ-FCHG-FLAG" identifies whether interest should be charged on the balance carried over from the previous billing cycle (or "CYC1P," as this field labels that balance), and the "Y" code indicates that interest should be (and was in fact) charged on this balance.  The field "AH31-ADB-CURR-SUBJ-FCHG-FLAG" identifies whether interest should be charged on the portion of any balance reflecting any new purchases made during the current billing cycle (or "CURR," as this field labels that balance), and the "N" code indicates that interest should not be (and was in fact not) charged on this balance.  These codes confirm what the logic in Exhibit E illustrates—that Mrs. Dress was not charged interest on new purchases during the billing cycle that ended on December 25, 2017.

26.     The $20.83 in interest that Mrs. Dress was charged in December 2017 is reflected in the "Purchases" row of the "Interest Charge Calculation" section of the statement (Exhibit D).  This row on Mrs. Dress's statement identifies interest charges assessed to the portion of the balance on her account that relates to the "purchase" segment, which includes purchases charged to Mrs. Dress's credit card in any previous billing cycles, as well as any interest that has accrued on those purchases.  The "Purchases" row does not necessarily reflect interest that has been

charged on new purchases in this billing cycle, as new purchases that are not charged interest

(like Mrs. Dress's December 19 purchase) are not included in that field on the statement.

27.     Attached as Exhibit H are true and correct copies of the monthly billing

statements for Mrs. Dress's account from the billing cycle ending in January 2018 through the

billing cycle ending in March 2019.  As the billing statements in Exhibit H illustrate, Mrs. Dress

has not been charged any interest on her Capital One account since December 2017.  In addition,

as the billing statements in Exhibit H illustrate, Mrs. Dress has not made any new purchases

using her Capital One account since January 27, 2018.  *See* Ex. H at 7.

28.     I have reviewed Capital One's account records for Mrs. Dress's credit card

account.  Based on my review, I do not see any instance where Mrs. Dress was charged interest

on new purchases in a month where she also paid the previous month's statement balance in full

by the due date.

**Mrs. Dress's December 2017 interest charge is refunded.**

29.     In March 2018, Capital One began the process of issuing a refund to Mrs. Dress

for the $20.83 interest charge she was assessed in December 2017.  A true and correct copy of a

screenshot of Capital One's system is attached as Exhibit I, which reflects that the $20.83 refund

posted to Mrs. Dress's account on April 2, 2018.  This refund also was reflected on Mrs. Dress's

monthly billing statement for the billing cycle ending in April 2018.  *See* Ex. H at 12.

30.     If a credit balance refund has been on an account for two statement cycles, it is

Capital One's standard practice for accounts like Mrs. Dress's to issue a check to a customer in

the amount of the credit balance and mail that check to the same address listed on a customer's

monthly billing statements.  The monthly billing statement for the billing cycle ending in May

2018 reflects that, in connection with this standard practice, a credit balance refund check in the

amount of $20.83 was issued to Mrs Dress on May 25, 2018, the day her May 2018 billing cycle closed  *See* Ex H at 16

Pursuant to 28 U S C  § 1746, I declare under penalty of perjury that the foregoing is true and correct

Executed on ___March 29___, 2019 in Goochland, Virginia

Kristen Chapman