IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SUSAN DRESS, AMY EDWARDS, and STEPHANIE BARNETT, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>*Defendant.* | Civil No. 1:19-cv-00343<br><br>Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. 50). The motion is fully briefed, and the Court dispensed with oral argument, finding it would not aid in the decisional process. For the reasons stated below, and for good cause shown, Defendant's Motion to Dismiss (Dkt. 50) is **GRANTED**.

### I. BACKGROUND

Plaintiffs each have Capital One credit cards and dispute Capital One's authority to charge Plaintiffs interest on new purchases when they pay off their account balance in full by the due date of their next monthly statement, but had not paid off their account balance in full by the due date of their previous monthly statement.

The Capital One Customer Agreement includes the following relevant provisions regarding charging interest:

> We will charge Interest Charges and Fees to your Account as disclosed on your Statement and other Truth-in-Lending Disclosures. In general, Interest Charges begin to accrue *from the day a transaction occurs*. However, we will not charge you interest on any *new transactions* posted to the purchase Segment of your

Account *if you paid the total balance* across all Segments of your Account in full by the due date on your Statement *each month.*

. . .

We will continue to charge Interest Charges during Billing Cycles when you carry a balance regardless of whether your Statement includes a minimum payment that is due.

Dkt. 43-1 at 4 (italics in original removed, emphasis added).

The monthly billing statements sent to Plaintiffs, which were incorporated by reference into the Customer Agreement, included slightly different, yet consistent, disclosures regarding interest:

> **How can I Avoid Paying Interest Charges?** If you pay your statement's New Balance in full by the due date, we will not charge you interest on any *new transactions that post* to the purchase segment. If you have been paying your account in full with no Interest Charges, but then you do not pay your next New Balance in full, we will charge interest on the portion of the balance that you did not pay. . . .
>
> **How is the Interest Charge applied?** Interest Charges accrue from the date of the transaction or the first day of the Billing Cycle. *Interest Charges accrue on every unpaid amount until it is paid in full. This means you may owe Interest Charges even if you pay the entire New Balance for one Billing Cycle, but did not do so the previous Billing Cycle.* . . .
>
> **How do you Calculate the Interest Charge?** We use a method called Average Daily Balance *(including new transactions)*.
> 1. First, for each segment we take the beginning balance each day and *add in new transactions* and the periodic Interest Charge on the previous day's balance. Then we subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. *However, if your previous statement balance was zero or a credit amount, new transactions which post to your purchase segment are not added to the daily balance.* . . .

*E.g.*, Dkt. 43-2 at 3 (underline and bold in original, emphasis added).

When Plaintiffs Barnett and Edwards contacted Capital One about the terms of their credit card agreements, Capital One provided Plaintiffs with a copy of the Capital One Customer Agreement and summarized the key current terms in a "Current Terms Letter." In the Current

Terms Letter, Capital One stated that it "will not charge interest on new purchases, provided you have paid your *previous* balance in full by the due date each month." Dkt. 43-3 at 2 (emphasis added). Capital One more fully explained that:

> If you pay your statement's "New Balance" in full by the due date, we will not charge interest on any *new transactions that post* to the Purchase balance. If you have been paying your account in full with no interest charges, but then you do not pay your next "New Balance" in full, we will charge interest on the portion of the balance that you did not pay. . . .
>
> . . . Interest charges accrue on every unpaid amount until it is paid in full. This means you may owe interest charges even if you pay the entire "New Balance" one month, but did not do so for the previous month. . . .
>
> For each segment of your account, we calculate your total interest charge by multiplying your average daily balance by the daily periodic rate and multiplying the result by the number of days in the billing period. . . . To determine your daily balance: 1) take the beginning balance and *add in new transactions* and the periodic interest charge on the previous day's balance. 2) Subtract any payments and credits for that segment as of that day. *However, if you paid your previous month's balance in full (or if your balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.* Also, transactions that are subject to a grace period are not added to the daily balances.

*Id.* at 4 (emphasis added).

Plaintiffs have raised four claims against Defendant Capital One Bank on behalf of themselves and all others similarly situated: (I) breach of contract, (II) breach of the covenant of good faith and fair dealing, (III) violation of Massachusetts's unfair competition and unfair or deceptive practices act, Massachusetts General Laws, Chapter 93A,[1] and (IV) violation of the fraudulent prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.[2]

Capital One has moved to dismiss Plaintiffs' Amended Complaint in its entirety, arguing that Plaintiff Dress lacks standing and that the Amended Complaint fails to state a claim because

---

[1] This claim is brought only by Plaintiff Dress and the Massachusetts Subclass.
[2] This claim is brought only Plaintiffs Barnett and Edwards on behalf of themselves and the California Subclass.

the parties' agreements clearly establish that Capital One has the authority to charge interest on new purchases made after a Capital One customer failed to pay off his or her full account balance by the due date of the previous monthly statement.

## II. ANALYSIS

### A. Plaintiff Dress Lacks Standing.[3]

The Supreme Court has established that the "irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). A plaintiff bears the burden of establishing these elements of standing "for each claim" advanced and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "The Supreme Court has made clear that 'named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) (internal quotation marks omitted). In other words, if a named plaintiff in a purported class action cannot establish standing, she cannot "seek relief on

---

[3] In Defendant's opening brief, Defendant argued that none of the named plaintiffs had standing. Based on clarifications by Plaintiffs in the opposition brief, however, Defendant now argues only that Plaintiff Dress does not have standing.

4

behalf of [herself] or any other member of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Capital One argues that Plaintiff Dress lacks standing to pursue monetary damages because she received a pre-litigation refund of the $20.83 interest charge she challenges in the Amended Complaint. In support of this position, Capital One persuasively cites to *Epstein v. JPMorgan Chase & Co.*, which held that a plaintiff lacked standing to pursue a breach of contract action against his credit card company where he had received a pre-suit reimbursement of interest charge he challenged. 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014). In opposition, Dress argues that the pre-litigation refund does not deprive her of standing because the refund did not (a) include the minimum statutory damages Dress seeks, (b) remedy the class-wide injury alleged, or (c) compensate Dress for the lost time value of the refunded interest payment. Each of Dress's arguments are unavailing.

First, "entitlement to statutory damages, in and of itself, does not establish the requisite injury-in-fact" for standing. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 766 (D. Md. 2013); *accord Katz v. Donna Karan Int'l, Inc.*, 2017 WL 2191605, at *7 (S.D.N.Y. May 17, 2017) ("The availability of statutory damages, without any injury, does not automatically confer standing." (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016))).

Second, as noted above, "[c]ourts have made clear that the standing requirement cannot be dispensed with by styling a complaint as a class action . . . the plaintiff still must allege a distinct and palpable injury to [herself], even if it is an injury shared by a large class of other possible litigants." *Epstein*, 2014 WL 1133567, at *8–9 (citations and internal quotation marks omitted). Dress's reliance on *Suk Jae Chang v. Wozo LLC*, 2012 WL 1067643 (D. Mass. Mar. 28, 2012), to avoid this requirement is misplaced. Unlike in this case, *Suk Jae Chang* involved a

5

defendant's attempts to "pick off" the named plaintiff in a putative class action by offering the plaintiff – who, unlike Dress, had not received a refund prior to filing suit – a post-complaint refund, which, again unlike Dress, the plaintiff did not accept.

Finally, Dress has failed to sufficiently plead actual injury for the lost time value of the roughly $21 that she has since been refunded. As an initial matter, it is unclear whether the lost time value of such a small sum qualifies as a cognizable constitutional injury.[4] Even if the lost time value of $21 could qualify as an injury in fact, however, Plaintiff Dress would still not have standing because she has not alleged a concrete, actual, non-hypothetical loss of that time value. Throughout the Amended Complaint, Plaintiff Dress alleges only that she has "sustained damages as a result of Capital One's" conduct. Plaintiff Dress never alleges nor implies that she would have invested the $21 to increase its value if it had not been charged as interest. Where a plaintiff raises an injury in fact argument premised solely on the lost time value of money, conclusory allegations that the plaintiff "was deprived of the use of those funds and is entitled to be compensated for [the] lost use of funds" are not sufficient to establish injury in fact even at the motion to dismiss stage. *Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018) (internal quotation marks omitted).

Plaintiff Dress therefore lacks standing to pursue any of her claims seeking monetary damages.

---

[4] *Compare Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (finding that the plaintiffs had standing "because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal"), *and Porsh v. LLR, Inc.*, 380 F. Supp. 3d 418, 425 (S.D.N.Y. 2019) (finding the lost time value of $50.63 was sufficient injury-in-fact to establish standing), *with Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018) (explaining that "accepting the lost time value of money as a cognizable constitutional injury is far from well established" because the Seventh Circuit is the only circuit court that has done so and "some district courts have rejected the notion that lost time value of money is constitutionally sufficient to satisfy standing when the amount wrongfully taken or withheld was discharged before filing suit"), *and Epstein*, 2014 WL 113567, at *7 n.6 (noting that while, "[t]heoretically, Plaintiff could seek to premise standing on a damages theory that he was deprived of the opportunity to use and/or earn interest on the $0.67" while awaiting a pre-suit refund, "[a]llegations of that sort would be far too slender a reed on which to premise Article III standing").

Plaintiff Dress also lacks standing to sue for injunctive relief. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that 'allegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). Plaintiff Dress has failed to show any such certainly impending injury as she reduced her Capital One account balance to $0.00 in February 2018 and has not made a single charge to her account in the almost year and a half since. *See* Dkt. 52-19. Plaintiff Dress therefore lacks standing to pursue claims for injunctive relief.

### B. The Complaint Fails to State a Plausible Claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* In evaluating whether a complaint states a plausible claim to relief, "although a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

When the terms of a contract are "clear and unambiguous," courts are required to construe those terms "according to their plain meaning." *Golding v. Floyd*, 261 Va. 190, 192

(2001). "The fact that one may hypothesize opposing interpretations of the same contractual provision does not necessarily render the contract ambiguous because . . . a contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Erie Ins. Exch. V. EPC MD 15, LLC*, 297 Va. 21, 29–30 (2019) (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179 (2016)) (internal quotation marks omitted). Instead, "conflicting interpretations reveal an ambiguity only where they are reasonable." *Id.* at 29. "If the text of the agreement is unambiguous, then the court is without authority to resort to extrinsic evidence," such as public confusion, "in interpreting its meaning." *Schneider v. Cont'l Cas. Co.*, 989 F.2d 728, 732 (4th Cir. 1993).

The parties' agreements in this case unambiguously give Capital One the authority to charge interest on new purchases if the customer failed to pay off the full account balance by the due date of the previous monthly statement regardless of whether the customer pays off the full account balance by the due date of the next monthly statement. As Plaintiffs' claims all rest on a theory that the language in the customer agreements is ambiguous or misleading, all of Plaintiffs' claims must be dismissed for failure to state a claim.

### 1. Breach of Contract Claim.

In the Customer Agreement, Capital One discloses that interest charges generally "begin to accrue from the day a transaction occurs," but that Capital One will not charge interest "on any *new transactions* posted to the purchase Segment of your Account if you *paid* the total balance across all Segments of your Account in full by the due date on your Statement *each month*." Dkt. 43-1 at 4 (italics in original removed, emphasis added). This language unambiguously discloses that if a customer fails to pay his or her account balance in full one month, the customers will be charged interest on new purchases made the next month.

8

The use of the past tense "paid" and the qualifier "new" before transactions both demonstrate that the grace period Capital One promises is available only for purchases made during the current billing cycle (shown on the next monthly statement), i.e. "new transactions," where the customer had already "*paid* the total balance" reflected on prior statements "each month." The import of the cited language is consistent with language in the next column of the Customer Agreement, which warns customers that Capital One "will continue" to charge interest when the customer's account "carr[ies] a balance." *Id.*

The Customer Agreement is particularly unambiguous when read in conjunction with the Plaintiffs' monthly billing statements, which are incorporated into the Customer Agreement by reference. *See id.* ("We will charge Interest Charges and Fees to your Account as disclosed on your Statement and other Truth-in-Lending Disclosures." (italics in original removed)). The billing statements promise that if the customer pays the new account balance in full by the due date, Capital One "will not charge [the customer] interest on any *new* transactions *that post* to the purchase segment" of the account. *E.g.*, Dkt. 43-2 at 3 (emphasis added). The use of "new" and the future tense "that post" in the billing statements again demonstrates that the promised grace period only applies to transactions made after a customer has paid off his or her balance in full the previous month. It follows that if the customer did not pay off his or her balance in full the previous month, the customer will be charged interest on any new transactions. Indeed, later in the billing statements, Capital One warns customers that because interest charges "accrue on every unpaid amount until it is paid in full, . . . you may owe Interest Charges *even if you pay the entire New Balance for one Billing Cycle*, but did not do so the *previous* Billing Cycle." *E.g.*, *id.* (emphasis added).

The "How do you Calculate the Interest Charge?" section of the billing statements further confirms that Capital One has the contractual right to charge interest on new transactions if the customer did not pay off the account balance in full the previous month. That section explains that Capital One calculates interest charges "us[ing] a method called Average Daily Balance (*including new transactions*)." *Id.* (emphasis added). In explaining how the Average Daily Balance is calculated, Capital One confirms that new transactions are included in the daily balance calculation unless the customer's "previous statement balance was zero or a credit amount." *Id.*

Similarly, if a customer is confused about the terms of the credit card agreement with Capital One, Capital One provides the customer with a "Current Terms Letter" which clearly states that Capital One "will not charge interest on new purchases, provided you have paid your previous balance in full by the due date each month." Dkt. 43-3 at 2. While the language in the Current Terms Letter is the clearest of all of Capital One's disclosures and was not provided to any of the Plaintiffs until after they had incurred the challenged interest and contacted Capital One regarding the terms of their agreements, it is consistent with the plain meaning of Capital One's other disclosures.

Finally, in light of the "agreement as a whole" and the laws constraining Capital One's authority to charge fees, it would be "unreasonable and unrealistic" to interpret the Customer Agreement as promising that customers will never be charged interest on new purchases in the same billing cycle when those purchases were made. *Sweely Holdings, LLC v. Suntrust Bank*, 296 Va. 367, 378 (2018). If Capital One were to wait to charge interest on new transactions until customers fail to pay their account balance in full by the next monthly statement's payment deadline, Capital One would, by law, forfeit the ability to charge any interest on those new

purchases from the date of the purchases until the end of the billing cycle in which the purchases were made. *See* 15 U.S.C. § 1637(j)(1)(A) (prohibiting finance charges on "any balances for days in billing cycles that precede the most recent billing cycle"); 12 C.F.R. § 1026.54(a)(1)(i) (same). Yet, such a result cannot be reconciled with the disclosures in the Customer Agreement that interest charges "begin to accrue from the day a transaction occurs," much less the language in the monthly billing statements and Current Terms Letter indicating that interest is calculated based on the average daily balance of the account, including new transactions.

Thus, the customer agreements establish a simple, unambiguous rule: if a Capital One customer fails to pay off his or her account balance in full by the due date of a monthly statement, the customer will be charged interest on all unpaid amounts on the account – including new transactions – until the unpaid balance is paid off in full. Stated differently, the customer agreements clearly disclose that customers will be charged interest on new purchases made during the current billing cycle, accruing from the date of the transactions, if they fail to fully pay off their account balances by the due date of their previous monthly statement.[5] Each of the Plaintiffs were charged interest on new transactions only when they failed to pay off their account balance in full the previous month. As a result, "[t]he Complaint's allegations make clear that no breach [of contract] occurred," and the breach of contract claim (Claim I) must be dismissed for failure to state a claim. *Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 761 (E.D. Va. 2015).

---

[5] While the language of the Customer Agreement, if viewed in isolation, suggests Capital One may charge interest on new purchases if the customer has ever failed to pay off the account balance in full by the due date on a monthly statement, the narrower language in the monthly billing statements and Current Terms Letter appears to limit that authority and promise customers that Capital One will only charge interest on new purchases if a customer fails to pay off the account balance in full by the due date on the previous monthly statement.

11

### 2. Breach of the Covenant of Good Faith and Fair Dealing Claim.

For similar reasons, Plaintiffs' breach of the covenant of good faith and fair dealing claim (Claim II) must also be dismissed because Capital One exercised its contractual *right* to charge interest on new purchases after Plaintiffs failed to pay their balances in full the previous month. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) ("[I]t is a basic principle of contract law in Virginia, as elsewhere, that . . . the duty of good faith does not prevent a party from exercising its explicit contractual *rights* . . . ." (emphasis in original)); *Riggs Nat'l Bank of Wash., D.C. v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994) ("An implied duty of good faith cannot be used to override or modify explicit contractual terms."); *Wilkins v. United States*, 2016 WL 2689042, at *4 (E.D. Va. May 9, 2016) (dismissing implied covenant claim where the defendant "had the contractual right . . . to engage in the actions alleged in the Complaint"); *Bennett v. Bank of Am., N.A.*, 2012 WL 1354546, at *11 (E.D. Va. Apr. 18, 2012) (dismissing implied covenant claim where the defendant bank exercised its contractual rights and it was not plausibly alleged that the bank "exercise[d] its contractual discretion in bad faith" (alteration in original)); *Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341, at *6 (E.D. Va. Oct. 5, 2011) (dismissing implied covenant claim where "the actions taken by Defendants merely amounted to an exercise of their contractual rights").

### 3. Unfair Competition Law and Fraud Claims.

Plaintiffs' remaining two claims, based on Massachusetts's and California's unfair competition and fraudulent and deceptive practices laws, must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements because they sound in fraud. Under Rule 9(b), a plaintiff must plead "with particularity the circumstances constituting fraud," including "the time, place, and contents of the false representations." *Spaulding v. Wells Fargo Bank, N.A.*,

714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed. R. Civ. P. 9(b) and *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

As the Court has found that the parties' agreements unambiguously gave Capital One the authority to impose interest in the way it did, Plaintiffs have not plausibly identified any false or misleading statements made by Capital One. Further, it is well settled that mere disputes over the proper interpretation of a contract, like this one, do not create actionable fraud claims under either Massachusetts's Chapter 93A or California's Unfair Competition Law absent additional plausible allegations that the defendant's conduct was unfair or egregious, which Plaintiffs do not allege. *See, e.g., Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (noting that the facts underlying a Massachusetts Chapter 93A claim "must illustrate something beyond a mere good faith dispute ... or simple breach of contract"); *Ellis v. J.P. Morgan Chase & Co.*, 2016 WL 5815733, at *7 (N.D. Cal. Oct. 5, 2016) (holding that allegedly fraudulent statements related to the defendant's interpretation of its authority under mortgage agreements were not actionable under California's Unfair Competition Law), *aff'd*, 752 F. App'x 380 (9th Cir. Aug. 28, 2018); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *5, *10 (C.D. Cal. Mar. 24, 2015) (rejecting a California Unfair Competition claim under the fraudulent prong because the plaintiff's theory of liability "is a breach of contract claim and nothing more," and "[t]here is simply no deception" because the defendant did not breach the contract); *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) ("Because a breach of contract claim cannot form the basis for a [California Unfair Competition Law] claim without additional unlawful, unfair, or fraudulent conduct, Plaintiff's [California Unfair Competition Law] claim based on breach of contract fails as well."); *Ji v. Bose Corp.*, 647 F. Supp. 2d 77, 80 (D. Mass. 2009) (dismissing Massachusetts Chapter 93A claim where the defendant's conduct was within the

scope of its contractual authority and thus the defendant "in no way acted immorally, unethically, oppressively or unscrupulously"); *Santander Bank, N.A. v. Santilli Enters., Inc.*, 34 Mass. L. Rptr. 638, 2018 WL 1385430, at *6 (Mass. Super. Ct. Feb 14, 2018) (collecting cases holding that a party "cannot be subject to a Chapter 93A claim when it did no more than what the parties' contract explicitly allows").

As a result, Plaintiffs' Massachusetts Chapter 93A claim (Claim III) and California Unfair Competition Law claim (Claim IV) must also be dismissed for failure to state a claim.

### III. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 50) is hereby **GRANTED**. Finding that amendment would be futile, Plaintiffs' Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

July 30 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge